UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Luis Daniel Garcia,

    Plaintiff,

v.

Blayne Lehner, in his individual capacity as an officer of the City of Minneapolis, and the City of Minneapolis,

    Defendants.

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED UNDER 38(b)**

---

For his Complaint, Plaintiff Luis Daniel Garcia hereby states and alleges as follows:

## PARTIES AND JURISDICTION

1. This is an action for money damages for injuries sustained by 18-year old Luis Daniel Garcia as a result of violations of his constitutional rights by Blayne Lehner, an on-duty Minneapolis police officer with a history of using unreasonable force. Defendant Lehner's use of unreasonable force on Plaintiff, in the form of a kick to the face while Plaintiff was defenseless and handcuffed in the backseat of a police squad car, was so extreme it caused Plaintiff to suffer a broken jaw and knocked out his two front teeth.

2. Plaintiff also asserts claims against the City of Minneapolis under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978) as Defendant Lehner's use of unreasonable force was enabled and directly caused by the custom or practice of the City of Minneapolis of deliberate indifference to the use of such use of unreasonable force by Lehner and other Minneapolis police officers.

3. Defendant Lehner's conduct in assaulting Plaintiff on December 29, 2013 violated Plaintiff's well-settled federal civil rights to be free from unreasonable force and false arrest, all while acting under color of state law.

4. Defendant Lehner was acting within the course and scope of his employment with the City of Minneapolis when he violated Plaintiff's constitutional rights on December 29, 2013.

5. Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution.

6. At the time of the use of unreasonable force which is the subject matter of this Complaint, Plaintiff resided in Minneapolis, Hennepin County, Minnesota, although he now resides in Saint Paul, Ramsey County, Minnesota.

7. At all material times herein, Defendant Lehner was a resident of the City of Lakeville, County of Dakota, although he worked in the City of Minneapolis as a duly appointed and acting officer of the Minneapolis Police Department. Lehner is sued in his individual capacity.

8. The City of Minneapolis is a municipality incorporated under the laws of the State of Minnesota.

9. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(3), which confer this Court with original jurisdiction in this matter.

10. The amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, excluding interest and costs.

11. Plaintiff requests declaratory and injunctive relief. He also seeks compensatory and punitive damages permitted by law, as well as statutory attorneys' fees and expenses.

12. Plaintiff demands a jury trial as to all issues of fact herein.

## FACTUAL BACKGROUND

13. On December 29, 2013, just before 3:00 a.m., Minneapolis Police Officers Lukes and Misgen were investigating an incident in the Kingfield neighborhood near 3710 Nicollet Avenue South in Minneapolis, Minnesota.

14. At approximately the same time, Plaintiff was a backseat passenger in a 1995 Honda Accord, which was traveling southbound on Nicollet Avenue, returning from a neighborhood party held at a private home on the 3100 block of 1st Avenue South. Plaintiff was traveling in the vehicle with his 23-year old sister, Miriam, and two of her friends to a home near Washburn High School to drop off Miriam's friend, Stephanie.

15. As the Accord traveled southbound on Nicollet, Officer Christopher Kelley, who was patrolling a nearby area, claimed the Accord "accelerated" and passed too closely to Officer Lukes, who was crossing Nicollet on foot. Officer Kelley's claim provided justification for other officers to pursue the Accord, even though none of the vehicle's occupants had committed any crimes and were not connected in any way to the original call being investigated.

16. After the Accord pulled over near Anodyne Coffee at 43rd Street and Nicollet Avenue South, Officer Kelley removed the driver, Antonio Rios Aguilar, from the vehicle at gunpoint, handcuffing him and placing him in the rear of Kelley's squad car, number 521.

Aguilar was later charged with reckless driving, which was the most serious criminal act committed by any of the Accord's four occupants.

17. While Aguilar was being placed into the rear of squad 521, Plaintiff, who is approximately 5'5" and 125 pounds, remained seated in the rear of the Accord.

18. At approximately this time, an additional squad car ("the second squad car"), occupied by Officer Steven Wuorinen and Defendant Lehner, arrived on the scene.

19. As other officers arrived, Officer Kelley approached the Accord and asked Plaintiff for identification. Plaintiff - who has lived in the U.S. since the age of 5, but does not have a state-issued identification card - was unable to provide one, instead identifying himself by name and birthdate.

20. Officer Kelley nonetheless persisted in demanding that Plaintiff provide identification, at which point Plaintiff - who had already repeatedly indicated he did not have identification – cursed loudly, which caused Officer Kelley to remove Plaintiff from the rear of the Accord and handcuff him.

21. Officer Kelley testified, "because of the alcohol, because of the curse word, I decided to put [Plaintiff] in handcuffs because that's not the proper way to talk to a police officer and I don't want to escalate into a bigger situation."

22. Due to Plaintiff's extremely small size and the lack of physical threat he posed, however, Officer Kelley was able to handle Plaintiff without any assistance from other officers and Kelley encountered no physical resistance from Plaintiff as he took him into custody.

23. As Officer Kelley testified: "Got him in back, handcuffed him and really there was no serious incident when I made contact with him. And escorting officers took him back to another squad."

24. Officer Wuorinen then took custody of the handcuffed Plaintiff, placing him in the backseat of the second squad car.

25. While Plaintiff was handcuffed in the squad car, Defendant Lehner testified:

> The squad door was shut, and I just stayed at the back side -- or the back of the squad car, and I was just talking to Officer Wuorinen. And while there, I noticed the defendant was thrashing around and kicking inside the back seat of the squad car, so I opened up the squad door to prevent him from damaging the squad and to tell him to stop doing what he's doing.

3

26. According to Defendant Lehner, Plaintiff's actions in "thrashing around" put him at risk of injury, which, in Defendant Lehner's view, provided sufficient justification for him to intervene physically with Plaintiff:

> They can severely hurt themselves. I've had numerous incidents with people who thrash around the back. They've hit their heads on the divider between the front seat and the back seat and they slice their heads open. They've hurt their legs. All types of different injuries.

27. Although the second squad car in which Plaintiff was detained was equipped with a camera, one purpose of which is to record the activities of arrestees causing damage while being detained in the backseat of the squad car, Defendant Lehner consciously chose not to activate the recording equipment, which could have been easily accomplished by pushing a button.

28. At the time Defendant Lehner claimed to have such serious concern for the welfare of Plaintiff and/or the squad car, Plaintiff had not, in fact, injured himself, nor had he damaged the squad car in any way. By way of explanation, Defendant Lehner later testified that Plaintiff did not cause any damage or injury "because I did not allow him to."

29. Instead of simply turning on the backseat video camera to document the alleged attempts to damage the interior of the squad car, Defendant Lehner chose to confront the handcuffed, diminutive Plaintiff – to "gain control" of him – although Plaintiff was already fully controlled in the rear of the squad.

30. With the video camera still off, Defendant Lehner made the deliberate choice to open the rear door of the squad car to physically interact with Plaintiff. In doing so, Defendant Lehner sought to harm Plaintiff, as his actions served no legitimate police function.

31. After opening the rear squad car door, Defendant Lehner made the deliberate choice to use a significant amount of force on Plaintiff, kicking Plaintiff in the face with his police-issued Danner brand boot with so much force that it caused Plaintiff to lose consciousness.

32. For his part, Defendant Lehner estimated that, following his kick to Plaintiff's face, Plaintiff was unconscious for "half a second, a second."

33. Because Plaintiff's hands were handcuffed behind his back as he sat in the rear of the squad car, Plaintiff was unable to defend himself from Defendant Lehner's unprovoked and completely unjustified use of unreasonable force.

34. Defendant Lehner's vicious kick broke Plaintiff's jaw - an open fracture causing the bone to protrude through his gums – and knocked out his two front teeth, in addition to

4

causing fractures to Plaintiff's nose and sinuses. Plaintiff began bleeding profusely from his face, as his lower lip was also severely lacerated.

35. After kicking Plaintiff in the face, Defendant Lehner testified that he closed the squad door again for "three, four seconds" before opening it again and removing Plaintiff from the vehicle.

36. Despite acknowledging that he kicked Plaintiff in the face, and despite acknowledging that Plaintiff had all of his teeth at the time Lehner initially interacted with him, Defendant Lehner testified that he has "no idea" how Plaintiff lost his two front teeth.

37. When it became apparent that Plaintiff was seriously injured, Officer Wuorinen and Defendant Lehner drove him to HCMC, where Defendant Lehner chose to stay in the squad car to avoid explaining how Plaintiff had gotten injured.

38. At HCMC, medical records described Plaintiff's appearance upon arrival as bleeding "copious amounts of blood," so much blood that when Plaintiff was "talking [he] was spitting blood (not intentional.)"

39. Although he was unwilling to actually enter the hospital with Plaintiff, Defendant Lehner nonetheless falsely testified under oath that Plaintiff still had his two front teeth when he was dropped off at HCMC, an allegation which a squad-car video would have easily disproved.

40. Defendant Lehner's false testimony about Plaintiff's injuries was as follows:

> When he was in the back seat of that squad, he had all his teeth. Now, what happened when he was walked into the hospital, and what happened in the hospital, and later, with his teeth, I have no idea.

41. Because Defendant Lehner was unwilling to interact with the medical providers at HCMC, Officer Wuorinen was left to explain Plaintiff's injuries and he told medical providers that Plaintiff sustained his severe facial injuries when his face hit concrete, as opposed to being caused by being kicked in the face by Wuorinen's partner while Plaintiff was handcuffed in the backseat of a video-enabled squad car whose video system was inexplicably not engaged.

42. As a result of Defendant Lehner's violent kick to his face, Plaintiff required multiple root canals and will require implants to replace his front teeth. Because his lower lip was lacerated and dangling downward, it had to be stitched. His fractured mandible required Plaintiff to comply with a soft food-only diet while his jaw was wired shut. Plaintiff also continued to experience severe headaches following the assault by Defendant Lehner.

43. As he has done several times in the past in efforts to cover up his unconstitutional misconduct, Defendant Lehner filed a false report in which he attempted to avoid responsibility for causing serious injury to Plaintiff.

44. In the process, Defendant Lehner created a false justification for why he had just smashed in the face of a handcuffed, 5'5", 18-year old man, who was detained in a squad car simply for being a passenger in a vehicle who was unable to provide identification.

45. At 5:09 a.m. on December 29, 2013, Defendant Lehner completed a supplemental report in which he claimed that he merely "lifted [his] right leg to *push* kick [Garcia] into the squad so the door could possibly be closed or we could gain some control of him."

46. Defendant Lehner's combination of the terms "push" and "kick" was designed to leave the impression that he had not, in fact, used much force on Plaintiff, which would fail to explain how Plaintiff suffered such serious injuries. Defendant Lehner's unwillingness to acknowledge the degree of force he used is consistent with his implausible denial of the fact that his kick caused the loss of Plaintiff's two front teeth.

47. Moreover, Defendant Lehner's report demonstrates his utter lack of understanding of the term "push," as in his report he claimed that he merely lifted his right leg and "*pushed* it into the vehicle at [Plaintiff's] torso," but Plaintiff then "leaned forward at me with his upper body changing the target of my push kick."

48. Despite his attempts to minimize his conduct in his initial report, Defendant Lehner subsequently became concerned that he had nonetheless admitted to kicking a handcuffed 125-pound man in the face, breaking his jaw and knocking out his teeth. As a result, at 5:40 a.m., Defendant Lehner wrote another supplemental report in which he further attempted to shift the blame for the severity of Plaintiff's injuries onto Plaintiff himself.

49. Defendant Lehner claimed he wrote the supplement merely to "clarify a sentence," indicating that he wanted to make clear Plaintiff "had changed his position" during the "push kick" and that "it was due to the quick movement of [Plaintiff] that he was struck in the face." Lehner claimed he was "all ready [sic] in the kicking motion," and simply intended to "push kick [Plaintiff] in the chest…not to hit him in the face."

50. Plaintiff was later charged with obstructing legal process, giving a peace officer a false name, disorderly conduct and consuming alcohol under the age of 21, all misdemeanors. He pled guilty to minor consumption, but all other charges were dismissed.

51. As a direct and proximate result of the excessive force and unreasonable seizure of Plaintiff by Defendant Lehner on December 29, 2013, Plaintiff has incurred special damages, including medical expenses, wage loss and expenses related to hiring legal counsel to defend against the false charges lodged against him.

52. Since December 29, 2013, Plaintiff has suffered general damages, including physical and mental pain and suffering as a direct and proximate result of the excessive force and unreasonable seizure by Defendant Lehner.

6

## COUNT I – DEFENDANT LEHNER
## 42 U.S.C. § 1983 FOURTH AMENDMENT VIOLATION

53. Plaintiff realleges and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth herein in their entirety.

54. By the actions described above, Defendant Lehner, under color of state law, violated and deprived Plaintiff of his clearly established and well-settled civil rights to be free from excessive force and unreasonable seizure under the Fourth Amendment of the United States Constitution.

55. Defendant Lehner deprived Plaintiff of these rights either maliciously or by acting with reckless disregard for whether Plaintiff's rights would be violated by his actions.

56. Defendant Lehner's actions were also objectively unreasonable pursuant to *Graham v. Connor*, 490 U.S. 386 (1989).

57. At the time Defendant Lehner kicked him in the face, Plaintiff posed no threat to the safety of Lehner, himself or others and was already handcuffed in police custody, in a position which left him defenseless against Lehner's kick to his face.

58. Plaintiff never actively resisted arrest or attempted to evade arrest by flight.

59. As a direct and proximate result of Defendant Lehner's actions, Plaintiff suffered serious injuries, was forced to endure pain and mental suffering, and was thereby damaged in an amount to be determined, but well in excess of amount Seventy-Five Thousand ($75,000) Dollars.

60. Punitive damages are available against Defendant Lehner and are hereby claimed as a matter of federal common law, and therefore are not subject to the pleading standard set forth in Minn. Stat. § 549.20.

61. Plaintiff is entitled to recovery of his costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

## COUNT II – DEFENDANT CITY OF MINNEAPOLIS
## CIVIL RIGHTS VIOLATION

62. Plaintiff realleges and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth herein in their entirety.

63. As of December 29, 2013, Defendant City of Minneapolis maintained a custom and practice of deliberate indifference to the use of excessive force by its officers.

64. Prior to December 29, 2013, the City of Minneapolis, with deliberate indifference to the rights of those within its jurisdiction, initiated, tolerated, permitted, failed to correct, promoted, and/ or ratified a custom, pattern, or practice on the part of its officers, including Defendant Lehner, of the use of excessive force and unreasonable seizure in violation of the United States Constitution.

65. Upon information and belief, there have been at least fifteen complaints and three lawsuits filed against Defendant Lehner wherein it has been alleged, in part, that he used excessive or unreasonable force.

66. Prior to December 29, 2013, Defendant City of Minneapolis, with deliberate indifference to the rights of those within its jurisdiction, continued to employ Defendant Lehner as a police officer despite notice that he had repeatedly used excessive and unreasonable force.

67. Through the City of Minneapolis' ratification and approval of its officers' actions, in both this case and others, and by failing to discipline its officers, including Defendant Lehner, there has been a policy, custom, or practice of the use of excessive force and unreasonable seizure without sanction or consequence.

68. As of December 29, 2013, Defendant City of Minneapolis maintained a custom and practice of failing to take action to remove Defendant Lehner from service despite his repeated misconduct.

69. Through its failure to take corrective or remedial measures or to punish or deter Defendant Lehner from using excessive and unreasonable force, the City's actions had the effect of condoning Defendant Lehner's use of unlawful and brutal police methods, which directly caused the unconstitutional arrest and assault of Plaintiff on December 29, 2013.

70. Moreover, by awarding Defendant Lehner a Department Award of Merit in May of 2014, the City further ratified Lehner's unconstitutional actions.

71. The constitutional deprivations suffered by Plaintiff were directly and proximately caused by the aforementioned acts and omissions and by the City's customs, patterns, and/ or practices, and the City of Minneapolis is thereby liable in an amount to be determined by the jury.

72. As a direct result of the acts and omissions, systematic flaws, policies, and customs of Defendant City of Minneapolis, Plaintiff's constitutional rights were violated and he was forced to endure pain and mental suffering, and was thereby damaged in an amount to be determined, in excess of Seventy-Five Thousand ($75,000) Dollars.

73. Plaintiff is entitled to recovery of his costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff Luis Daniel Garcia prays for judgment against the Defendants as follows:

1. As to Count I, a money judgment against Defendant Lehner for compensatory damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorney's fees under 42 U.S.C. § 1988, and prejudgment interest.

2. As to Count II, a money judgment against Defendant City of Minneapolis for compensatory damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with costs, including reasonable attorney's fees under 42 U.S.C. § 1988, and prejudgment interest.

3. For injunctive relief against Defendant City of Minneapolis, including changes in the way it administers discipline to officers who use excessive force; and

4. For such further relief as this Court deems just and equitable.

Dated: August 5, 2015

PRITZKER OLSEN, P.A.

_____
Eric Hageman (MN# 258180)
Attorneys for Plaintiff
45 South Seventh Street
Plaza VII, Suite 2950
Minneapolis, MN 55402
Phone: 612-338-0202
Fax: 612-338-0104
Email: eric@pritzkerlaw.com

9